Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI130001811
Transaction ID: 0000623876
Filing Date: 03/05/2013 04:24:19 PM CST

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| AARON THORNTON and TRICIA THORNTON, Husband and Wife, | ) ) ) | CASE NO. CI ___-_____ |
| | ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **COMPLAINT** |
| STATE FARM INSURANCE COMPANIES, | ) ) ) ) | |
| Defendant. | ) | |

COME NOW the Plaintiffs, Aaron Thornton and Tricia Thornton, and for Plaintiffs' causes of action against the Defendant, State Farm Insurance Companies, assert this Complaint, stating and alleging as follows:

1.     That at all times hereinafter material, Plaintiffs were/are residents of Omaha, Douglas County, Nebraska; Defendant, State Farm Insurance Companies, was incorporated in Illinois and is duly authorized under the laws of the State of Nebraska to sell automobile insurance policies.

2.     That Plaintiffs were insured by Defendant on July 19, 2012 when Aaron Thornton was involved in a car/motorcycle collision occurring in Omaha, Douglas County, Nebraska, which included underinsured coverage of $100,000.00. Plaintiffs are not currently in possession of the insuring agreement.

3.     That the "insuring agreement" referred to in the previous paragraph provides that the insured is entitled to collect compensatory damages as a result of injuries sustained in a collision with an underinsured motor vehicle.

4.     Aaron Thornton suffered injuries including, but not limited to, multiple abrasions, road rash on his back, legs, right upper arm, shoulder, knuckles and large laceration/gash on his right lower leg in the July 19, 2012 motorcycle collision. At the time of the collision, Mr. Thornton was operating his 2011 Harley Davidson Motorcycle ("Plaintiff's vehicle"). At the time of the collision, Shane Trussell was operating a 2012 Ford Mustang ("Trussell's



EXHIBIT A

vehicle"). The collision occurred as a proximate result of the negligence of Shane Trussell when Mr. Trussell suddenly switched lanes in front of Plaintiff's vehicle. Aaron Thornton's total medical specials exceed $48,000.00. First Auto Insurance Company provided liability coverage for Shane M. Trussell and offered its insured's $25,000.00 limits on November 29, 2012. Plaintiff mailed a letter to Defendant pursuant to Neb. Rev. Stat. §44-6412 (Revised Issue) (attached hereto as Exhibit "A") and otherwise complied with all statutory notice requirements. The Defendant consented to Plaintiffs' settlement with Mr. Trussell.

5.     Attached hereto as Exhibit "B" is a January 22, 2013 letter from State Farm transmitting permission to Plaintiffs that allowed them to settle their liability claim against Mr. Trussell for $25,000.00.

6.     Attached hereto as Exhibit "C" is a February 5, 2013 letter from Plaintiff's attorney to Defendant's adjuster, Lionel McPhaull, updating Aaron Thornton's medical specials to include up to three recommended future surgeries at $5,000.00 per surgery and Kohll's Pharmacy bills. The total medical bills, including the three recommended future surgeries and Kohll's Pharmacy bills, are equal to $48,023.74. Exhibit "C" also reminds Defendant that Mr. Thornton has $9,572.40 worth of documented and verifiable lost wages.

7.     Attached hereto as Exhibit "D" is a February 18, 2013 letter from Plaintiffs' attorney to Defendant's adjuster, Lionel McPhaull, reminding the Defendant of its quasi-fiduciary duty to operate in good faith in dealing with the Thorntons; reiterating Mr. Thornton's medical problems—past and future, reiterating and detailing associated pain, suffering, treatments, and general inconvenience; reiterating the Defendant's failure to consider the claims of Mrs. Thornton; and finally, delineating, in-detail, why the Defendant's final offer of $25,000.00 for the Plaintiffs' claim is tantamount to Bad-Faith and a breach of its duty to its insureds.

8.     Defendant offered $25,000.00 of the $100,000.00 policy limits to Plaintiffs. Plaintiffs asked the Defendant to reconsider and raise the offer. Defendant refused to raise its offer.

9.     Plaintiffs allege that the auto accident of July 19, 2012 resulted in insured damages in excess of $50,000.00. Plaintiff's present and future medical damages, along with lost wages, exceed both the liability policy limits of First Auto Insurance Company and the Defendant's offer of $25,000.00, combined.

10.    Plaintiffs reliably believe that the sole, direct and proximate cause of the above described collision was the negligence of Shane M. Trussell in the manner in which he operated his motor vehicle. Mr. Trussell was negligent in one or more of the following particulars, to-wit:

   a)   In failing to maintain a reasonable and proper lookout for Plaintiff's vehicle, in violation of the statutes of the State of Nebraska;

   b)   In failing to keep the motor vehicle Defendant was operating under proper control, in violation of the statutes of the State of Nebraska;

   c)   In traveling at an excessive rate of speed for the conditions then and there existing, in violation of the statutes of the State of Nebraska;

   d)   In recklessly operating his motor vehicle, in violation of the statutes of the State of Nebraska; and

   e)   In failing to yield the right-of-way, in violation of the statutes of the State of Nebraska.

### FIRST CAUSE OF ACTION
### *BREACH OF CONTRACT*

11.    Plaintiffs incorporate paragraphs 1-10 above as if fully set forth verbatim herein.

12.    As a direct and proximate result of the negligence of Shane Trussell, as alleged in paragraph 8 of this Complaint, Plaintiff, Aaron Thornton,

sustained injuries (some of which are believed to be permanent in nature), to include, but not limited to the following:

    a.   Intractable heel pain with bruising;

    b.   Bruising of both legs and lumbar spine;

    c.   Chest wall pain – especially when breathing deeply;

    d.   Petechial hemorrhages on thoracic spine, and both lower extremities;

    g.   Swelling of right leg with possible venous insufficiency;

    h.   Right ankle pain;

    i.   Neck pain;

    j.   Lumbar back pain; and

    k.   Permanent disfigurement and wound pain and irritation.

    13.   As a proximate result of the negligence of Shane M. Trussell, Plaintiff, Aaron Thornton, sustained and incurred the following damages, to include, but not limited to:

    a.   Permanent injury and scarring – NJI2d §4.01(1);

    b.   Disability in the past and future – NJI2d §4.01(1);

    c.   Medical care expenses in excess of $33,000.00 in the past; and an amount as high as or greater than $15,000.00 in the future – NJI2d §4.01(2);

    d.   Physical pain, mental suffering, and emotional distress in the past and is reasonably certain to sustain physical pain, mental suffering and emotional distress in the future – NJI2d§4.01(5); along with a substantial amount of inconvenience; and

    e.   Lost wages in the amount of $9,572.40.

    14.   As a proximate result of the negligence of Shane Trussell, Plaintiff, Tricia Thornton, sustained and incurred damages related to her loss of consortium claim, as set forth fully below.

    15.   Plaintiff, Aaron Thornton, was born on January 8, 1981 and Plaintiff, Tricia Thornton, was born on September 8, 1972.

16.    Plaintiffs made claim to Defendant for compensatory damages under the underinsured motorist coverage of the "insuring agreement" (hereinafter "policy") described in paragraphs 2 and 3 of this Complaint.

17.    Defendant has breached its contract with Plaintiffs by failing to pay reasonable compensatory damages pursuant to the underinsured motorist coverage of the policy described in paragraphs 2 and 3 of this Complaint.

18.    Plaintiffs (one or both of them) satisfied any and all conditions precedent with respect to the Policy and the making of their underinsured demand to the Defendant.

### SECOND CAUSE OF ACTION
#### *BAD FAITH CLAIM*

19.    Plaintiffs incorporate paragraphs 1-18 above as if fully set forth verbatim herein.

20.    Plaintiffs, as parties to the insurance contract with Defendant, were owed a duty of good faith, honesty and fair dealing from Defendant.

21.    Defendant failed to act in good faith, honesty and fair dealing towards Plaintiffs by:

    a.    Failing to acknowledge and act with reasonable promptness upon pertinent communications regarding Plaintiffs' claim;

    b.    Not attempting, in good faith, to effectuate prompt, fair, and equitable settlement of claim(s) submitted by Plaintiffs; and

    c.    Refusing to pay Plaintiffs' claim(s) without conducting a reasonable investigation; and,

    d.    Failing to promptly provide reasonable explanation of the basis in the insurance policy in relation to the facts of the Plaintiffs' claim, or provide reasonable explanation of the basis in applicable law, for its $25,000.00 settlement offer.

22.    The Defendant possessed no reasonable basis for it to:

    a.    Fail to acknowledge and act with reasonable promptness upon pertinent communications regarding Plaintiffs' claim;

    b.    Not attempt, in good faith, to effectuate prompt, fair, and equitable settlement of claim(s) submitted by Plaintiffs;

    c.    Refuse to pay Plaintiffs' claim(s) without conducting a reasonable investigation; and,

    d.    Fail to promptly provide reasonable explanation of the basis in the insurance policy in relation to the facts of the Plaintiffs' claim, or provide reasonable explanation of the basis in applicable law, for its $25,000.00 settlement offer.

23.    The Defendant had knowledge of, and/or recklessly disregarded its knowledge of, the lack of reasonable basis for:

    a.    Failing to acknowledge and act with reasonable promptness, upon pertinent communications with regarding Plaintiffs' claim;

    b.    Not attempting, in good faith, to effectuate prompt, fair, and equitable settlement of claim(s) submitted by Plaintiffs;

    c.    Refusing to pay Plaintiffs' claim(s) without conducting a reasonable investigation; and,

    d.    Failing to promptly provide reasonable explanation of the basis in the insurance policy in relation to the facts of the Plaintiffs' claim, or provide reasonable explanation of the basis in applicable law, for its $25,000.00 settlement offer.

24.    Defendant's failure to act in good faith has caused Plaintiffs:

    a.    Additional mental and emotional suffering and depression; and

    b.    Financial hardship.

### THIRD CAUSE OF ACTION
#### *TRICIA'S CLAIMS*

25.    Plaintiffs incorporate by reference as though fully set forth herein each and every allegation of all previous paragraphs to this Complaint.

26.     As a proximate result of the negligence of Shane M. Trussell and the actions of the Defendant as set forth in this Complaint, and the resultant injuries and damages sustained by Aaron Thornton, Tricia Thornton sustained damages to include, but not limited to, her loss of consortium with her husband, Aaron Thornton, including her loss of comfort, society, companionship and support, along with many of the benefits she enjoyed as a result of their close spousal relationship.  Tricia has also suffered great inconvenience, financial hardship, and mental and emotional suffering.

WHEREFORE, Plaintiffs, Aaron Thornton and Tricia Thornton, as beneficiaries of Defendant's Underinsured Policy, pray for a determination of Defendant's liability to Plaintiffs for damages certainly in excess of Defendant's offer of $25,000.00 and more likely in excess of the policy limits of $100,000.00, and a judgment against the Defendant, for and including, pain and suffering, past and future medical care costs and treatment, inconvenience, mental pain and suffering, lost wages of $9,572.40, Tricia Thornton's loss of consortium, attorney fees incurred by Plaintiffs for having to bring this action (pursuant to Neb. Rev. Stat. §44-359 and other relevant Nebraska Statutes), allowable punitive damages, penalties, and for any and all other damages allowed by law, together with costs expended herewith.

DATED this 5th Day of March, 2013.

AARON THORNTON and TRICIA
THORNTON, Plaintiffs,


/s/ Sean P. Rensch
Richard J. Rensch, #15515
Sean P. Rensch, #23031
RENSCH & RENSCH LAW
John D. Wear Building
7602 Pacific St., Suite 102
Omaha, NE 68114

7

(402) 498-4400
dick@richardrensch.com
sean@renschlawyers.com
ATTORNEY FOR PLAINTIFFS

# ℞℞
## RENSCH & RENSCH LAW, P.C., L.L.O.
### ATTORNEYS AT LAW

RICHARD J. RENSCH

JOHN D. WEAR BUILDING
7602 PACIFIC STREET • SUITE 102
OMAHA, NEBRASKA 68114
402.498.4400
Fax 402.498.0339

SEAN P. RENSCH

December 11, 2012

**CERTIFIED MAIL**

State Farm Insurance Companies
c/o Dean Van Loon
222 South 84th Street
Lincoln, NE 68510

Lionel McPhaull
State Farm Insurance Companies
P.O. Box 52273
Phoenix, AZ 85072

|     |     |     |
| --- | --- | --- |
| RE: | Your Insured and Claimant: | Aaron Thornton |
|     | Claim No.: | 27-11D0484 |
|     | Date of Loss: | 7/19/12 |
|     | Underinsured: | Shane Trussell |

### R.R.S. §44-6412 (REVISED ISSUE) NOTICE

Gentlemen:

   This certified letter is intended to notify State Farm Insurance Companies pursuant to Nebraska Revised Statute §44-6412 for the reason that State farm insured Aaron Thornton by virtue of an underinsured motor vehicle policy, during a period of time that includes the above-referenced accident date of July 19, 2012.

   The above-referenced underinsured Trussell has tendered the liability limits of $25,000.00, by and through his liability carrier, First Auto. Enclosed herewith you will find a copy of First Auto's November 29, 2012 letter tendering its policy limits of $25,000.00 along with a November 28, 2012 Certification and Personal Auto Policy from First Auto. This amount is considered by the Claimant and me to be less than fair consideration for the damages arising out of the above-referenced date of loss.



EXHIBIT

A
4 pages

1 of 4

State Farm Insurance Companies
Lionel McPhaull
December 11, 2012
Page No. 2

## WRITTEN AUTHORIZATION

Enclosed herewith you will find a Medical Release Authorization and an
Employment Waiver in favor of State Farm Insurance Companies that can be used by
State Farm as it sees fit. Copies of same are to be honored as an original.

Aaron has been receiving treatment for multiple abrasions, road rash on his
back, legs, right upper arm, shoulder, knuckles and large laceration/gash on his right
lower leg. He experienced a spinal injury as well. Please see the enclosed
photographs of Aaron's injuries on the accompanying disk.

The wound on Aaron's right leg finally closed recently and, as of the week of
October 15, 2012, he stopped wearing a bandage on his right leg. It took 94 days of
bandage changes and constant care. Aaron has a gnarly scar and it's concaved. His
leg is still swollen. It is also sore, especially when he squats. Aaron's right ankle is still
painful. His ankle will not turn in as before. It just seems tight and he can't turn the foot
unless he puts it against something to make it turn. Aaron's right foot is still discolored.
The left side of Aaron's low back continues to be stiff and sore. He feels like an old
man at times when he stands up. Once Aaron stands up, his back feels better.
Sometimes Aaron's neck cracks when he turns to the left, which never happened
before the July 19, 2012 motor vehicle/motorcycle collision. It happened only a handful
of times but seems to be happening more often as time passes.

You will find the following-described medical bills and accompanying records on
the enclosed disk:

| | |
|---|---|
| Alegent Bergan Mercy Med Center (8/6 – 8/29/12) | $ 2,604.00 |
| Alegent Creighton Clinic (Nixon): | |
| 07/23/12 | $    192.00 |
| 07/26/12 | $    242.00 |
| 08/15/12 | $     45.10 |
| 08/15/12 | $    192.00 |
| 10/13/12 | $    192.00 |
| 10/31/12 | $    192.00 |
| Alegent Health Lakeside Hospital (7/26/12) | $    937.00 |
| City of Omaha (7/19/12) | $    726.00 |
| Creighton Medical Center (7/19/12) | $23,562.34 |
| Radiology Consultants: | |
| 07/26/12 | $     90.00 |
| 08/15/12 | $     35.00 |

RR
RENSCH & RENSCH LAW, P.C., L.L.O.

2 of 4

State Farm Insurance Companies
Lionel McPhaull
December 11, 2012
Page No. 3

| | | |
|---|---|---|
| Walgreen's: | | |
| 07/19/12 | $ | 24.19 |
| 07/19/12 | $ | 129.57 |
| 07/26/12 | $ | 11.99 |
| 08/15/12 | $ | 18.00 |
| Westfield Plastic Surgery (Ayoub): | | |
| 07/26/12 | $ | 242.00 |
| 08/02/12 | $ | 203.00 |
| 08/30/12 | $ | 163.00 |
| TOTAL | | $29,801.19 |

Aaron is a Douglas County Correction Officer and was forced to use 144 hours of sick leave or FMLA as a result of the July 19, 2012 motor vehicle/motorcycle collision. Aaron hourly wage is $26.11 plus 2% longevity, which totals approximately $26.59 an hour.

Aaron could have worked overtime those 144 hours he missed, which would have been $39.88 an hour. If Aaron works over time he works an additional 8 hours a day (16 hours total). Enclosed herein you will find documents showing Aaron's work history for the months of July, August and September of 2012.

$26.59 x 144 hours =    $3,828.96
$39.88 x 144 hours =    $5,743.00

TOTAL LOST WAGES                    $ 9,572.40

## LIABILITY

Enclosed herewith you will also find a copy of the police report which shows that Shane Trussell was clearly negligent by virtue of his vehicle switching lanes turning left in front of Plaintiff's motorcycle and that said negligence was the proximate cause of the above referenced collision. Please see photographs of Aaron's motorcycle and Shane Trussell's vehicle on the accompanying disk.

## STATE FARM'S DECISION

As you know, pursuant to §44-6412, if State Farm does not pay to Aaron Thornton the amount of the tendered limits in the amount of $25,000.00 within thirty

RR
RENSCH & RENSCH LAW, P.C., L.L.O.

3 of 4

State Farm Insurance Companies
Lionel McPhaull
December 11, 2012
Page No. 4

(30) days of our receipt hereof, State Farm will forfeit its right of subrogation for any amount of money paid under its insurance policy with Aaron Thornton.

If State Farm is not going to step up and pay, please transmit, at its earliest convenience, State Farm's permission for Mr. Thornton to settle with Mr. Trussell and First Auto.

Aaron's insurance agent advised me that Aaron has a $100,000/$300,000 underinsured polity with State Farm. I would appreciate it if you would verify the amount of coverage. I also believe State Farm ought to pay Mr. Thornton the limits of that policy.

Please response at your earliest convenience.

Very truly yours,

Richard J. Rensch

RJR/jdl
Enclosure
cc: Aaron Thornton

RENSCH & RENSCH LAW, P.C., L.L.O.

4 of 4

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*           **StateFarm™**

January 22, 2013

Rensch & Rensch Law                    **State Farm Claims**
7602 Pacific St Ste 102                 PO Box 52273
Omaha NE 68114-5405                     Phoenix AZ 85072-2273

RE:  Claim Number:  27-11D0-484
     Date of Loss:   July 19, 2012
     Our Insured:    Aaron Thornton

Attorney Rensch

State Farm will be waiving our subrogation rights and we will not substitute our coverages. You
have permission to settle the bodily injury for Aaron Thorton with First Auto Insurance Company.

Sincerely,

Lionel Mcphaull
Claim Representative
(800) 889-7144 Ext. 5975547

Fax: (800) 423-0474

State Farm Mutual Automobile Insurance Company


**EXHIBIT**
B

# RR

## RENSCH & RENSCH LAW, P.C., L.L.O.

ATTORNEYS AT LAW

RICHARD J. RENSCH

JOHN D. WEAR BUILDING
7602 PACIFIC STREET • SUITE 102
OMAHA, NEBRASKA 68114
402.498.4400
FAX 402.498.0339
February 5, 2013

SEAN P. RENSCH

**TRANSMITTED BY FACSIMILE TO 800-423-0474**

Lionel McPhaull
State Farm Insurance Companies
P.O. Box 52273
Phoenix, AZ 85072

RE:    Your Insured and Claimant:     Aaron Thornton
       Claim No.:                     27-11D0484
       Date of Loss:                  7/19/12

Dear Lionel:

The medical specials listed in my December 11, 2012 were incomplete and are revised per the attached documentation (stamped 100001-18).

Accompanying this letter you will also find Dr. Ayoub's December 17, 2012 chart. It states that he suffered a "deforming scar" on his right lower extremity (100001). Surgery would improve the appearance as well as hopefully some of the pain and itching he is experiencing. Dr. Ayoub states it would require most likely two to three surgeries at the cost of $5,000.00 per surgery.

I am also sending you a current Medical Specials List along with accompanying itemized statements showing the medical specials (including the approximate cost of future surgeries) to be $48,023.74 (100002). As you can see, there is a difference of approximately $20,000 in medical specials alone. This covers the cost of further scar revision surgeries and Kohll's Pharmacy representing special (and expensive) wound care medication (100013).

As stated in my December 11, 2012 letter, Mr. also has $9,572.40 in lost wages.

In light of State Farm's $25,000.00 offer, Mr. Thornton asks that State Farm reconsider and offer Mr. Thornton State Farm's UIM limits.

Very truly yours,

Richard J. Rensch

RJR/jdl
Enclosure
cc: Aaron Thornton

**EXHIBIT**
C

HISTORIC LIBRARY BUILDING • 1470 - 25T... ...SKA 68601 • 402.562.7759

# RR

## RENSCH & RENSCH LAW, P.C., L.L.O.
### ATTORNEYS AT LAW

RICHARD J. RENSCH

JOHN D. WEAR BUILDING
7602 PACIFIC STREET • SUITE 102
OMAHA, NEBRASKA 68114
402.498.4400
FAX 402.498.0339

SEAN P. RENSCH

February 18, 2013

**TRANSMITTED BY FACSIMILE TO 800-423-0474**
**And United States Mail**

Lionel McPhaull
State Farm Insurance Companies
P.O. Box 52273
Phoenix, AZ 85072

| | | | |
|---|---|---|---|
| RE: | Your Insured and Claimant: | Aaron Thornton | |
| | Claim No.: | 27-11D0484 | |
| | Date of Loss: | 7/19/12 | |

Dear Lionel:

You seem like a nice man. You are representing State Farm. State Farm has contracted with Aaron and his wife, Tricia, to provide auto insurance coverage to include medpay (only $1000) and UIM ($100,000). Therefore, the Thorntons are insureds of State Farm. As agent of State Farm, I assume you are aware that the Thorntons are owed a quasi-fiduciary duty of good faith in your dealings with them. That said, I look at my communications to you and I think that maybe I have not helped you understand Aaron's claim. I say that based on your response following my last communication with you on February 5, 2013 asking you to reconsider your very low offer of $25,000 to settle the Thorntons' UIM claim with State Farm.

In my February 5, 2013 letter, I advised you that I inadvertently under-reported Aaron's incurred medical bills by approximately $3,200 in my February 11, 2012 letter. I also furnish you with the underlying basis for the additional medical bills and provided to you a medical report from Aaron's surgeon outlining future scar revision surgeries and the estimated cost - an additional $15,000.00. The total medical bills incurred or to be incurred because of the negligence of the underinsured driver is now $48,000.00, an increase of $18,200.

That brings me to the response you gave to my trusted paralegal of 23 years, Joyce. You said that State Farm does not consider a future medical bill in your calculations for settlement. You said only treatment for which someone (in this case your insured) can produce a receipt or bill for payment is considered. If Joyce was mistaken or misunderstood you, please take some time to set her straight.

**EXHIBIT**

*D*

4 pages

1 of 4

HISTORIC LIBRARY BUILDING • 1470 - 25TH AVENUE • COLUMBUS, NEBRASKA 68601 • 402.562.7759

Lionel McPhaull
February 18, 2013
Page No. 2

May I remind you that, if you force the Thorntons to trial, our jury will be instructed on damages? Under economic damages of NJI2d Civ. 4.00, the very first paragraph instructs the jury that it may consider: *the reasonable cost of medical care needed and actually provided and reasonably certain to be needed and provided in the future.* I provided you with unsolicited and uncontroverted medical evidence setting out what was medically needed (in the future) to improve the scarring and reduce or eliminate the pain and other bothersome symptoms at the site of the scar and the cost of same. Please see Bate Stamped documents 100001 accompanying mine of February 5, 2013.

You mistake State Farm's medical payment coverage for UIM coverage when you say "you need a receipt before payment". Mr. Thornton was prevented by State Farm from purchasing more than $1,000 of Med Pay insurance coverage. That was used up immediately. State Farm already paid out the medical payment coverage of $1,000.

Mr. and Mrs. Thornton want to use the UIM coverage with State Farm to pay for the future treatment (and some of the leftover past) when they receive it. There is nothing in the policy that mandates a bill be presented before future medicals can be considered. If State Farm has a written policy, procedure or some type of instruction manual you are following when you make such claims, please allow me to see the language so I can present it to my clients.

The medical evidence from A.J. Nixon, M.D., alone, should require you to offer more than the $25,000. The medical records contained in the disc I sent you show the first visit with Dr. Nixon (see bated stamped documents NIXON 00007-8) occurred on July 23, 20012. This was after his release from Creighton Medical Center where he was hospitalized, in-patient. Aaron was seen by Dr. Nixon with multiple abrasions, road rash on his back, legs and arms, bilateral rib and back pain along with right ankle pain. It is reported he had road rash on over 15% of his body surface with a 6 inch gash on his right leg requiring 7 staples and pitting or medically know as petechial hemorrhaging over much of his affected body caused by the high impact trauma. These hemorrhages are present to this date in his right leg and both feet. The look is embarrassing to Aaron. Scurvy or a bad case of athlete's feet come to mind. Look this condition up on the internet if you are unfamiliar with it. I had to. Aaron is my client. Aaron is your insured. We both owe him that. Dr. Nixon, at that time, opined he could return to light duty work by July 30th. So we also know that Aaron is not a malingerer. He got back to work as soon as he could to mitigate damages that State Farm is obligated to pay to Aaron and Tricia. Aaron is upholding his duty to State Farm. I don't believe that a jury will see the reciprocation.

RR

RENSCH & RENSCH LAW, P.C., L.L.O.

2 of 4

Lionel McPhaull
February 18, 2013
Page No. 3

Aaron was next seen by Dr. Nixon on August 15, 2012 (BS NIXON 00014-15). He reported experiencing intractable heel pain with bruising at the site. The doctor observed bruising of both legs and lumbar spine. His back still hurts him. It hurts pretty much constantly. The pain is tolerable most of the time - but not all the time. He is a pretty big and tough corrections officer. The right side of Aaron's chest wall was painful - especially with breathing deeply. The petechial hemorrhages were noted on the thoracic spine as well on this occasion. Also noted was swelling of the right leg with possible venous insufficiency.

On October 31, 2012, Aaron reported heal pain, right ankle pain, neck pain, and lumbar back pain and bruising was seen by the doctor on Aaron's right leg. The lumbar spine, cervical spine and right ankle continue, to this date, to give him pain. Aaron was told on this visit to expect the pain to be a somewhat permanent fixture. He was experiencing all this pain in spite of taking his prescribed Flexeril and Naproxen.

I am enclosing a new disc containing all of the photographs taken to demonstrate the gravity of this case. You now have all the evidence we have about damages.

Most jurors are reasonable people. They will know that Aaron was the innocent party to this vehicular collision. While jurors might agree he is lucky to be alive, they certainly will want him to be paid back for his incurred medical bills, his lost wages and reasonable future medical treatment. That is $57,000, without one cent paid to Aaron for all the pain from the past and what will be suffered by him into the future because of the damages caused by this underinsured motorist - that State Farm contracted to indemnify Aaron for.

Your offer was $25,000. Your offer was unreasonable for a number of reasons. You offered hardly anything for his lost wages. Proving lost wages will be a complete no brainer. Do you need any further documentation? Please let me know if you do. Not one nickel for the first month of debriding his wound multiple times per week. You know - picking dead flesh and road debris from his deep leg wound? It was not pleasant for your insured. You offered nothing for changing his dressings daily for the first 90 days or so. That too was not pleasant. You know, when the scabs stick to the gauze, daily, it hurts.

No one, not your insured or any member of a jury, would look forward to those daily/weekly rituals of pain. You offered not one cent for the scarring to his leg. You

RR
RENSCH & RENSCH LAW, P.C., L.L.O.

*3 of 4*

Lionel McPhaull
February 18, 2013
Page No. 4

offered nothing for all the inconvenience (including travel to and from treatment) caused to the Thorntons as a proximate result of the wreck. You forgot to think of Mrs. Thornton for all the special care she provided and extra work to keep the household going.

You offer nothing for Aaron's pain, or the anxiety created in his life when reliving the accident daily. This is all in his medical records. Well, most of it is. There is some duty on your part to imagine what a fellow human being actually goes through in these high impact traumatic vehicular accidents. Aaron is a fellow human being that is also your insured.

Jurors many times have enough common sense to know that a plaintiff represented by a lawyer will have to pay the lawyer a fee from the verdict and make room for what they perceive are the legal costs when coming to a verdict. That too is a practice of many reputable insurers I've dealt with over the years. One thing is for sure, if we try this case and the jury sees it clear to award Mr. and Mrs. Thornton more than your offer, the judge will be forced to order State Farm to pay to the Thorntons, the attorney fees they incurred in bringing this to verdict.

I again ask you to please reconsider your offer. In light of the facts of this case, your current offer does not appear to be made in good faith. Please do not take exception. Please understand that I blame myself to some extent for not more fully providing you with the facts you need to make a decent offer. You now have all the current evidence that I have. You now have enough information (and hopefully insight) to make an offer that shows your insureds that State Farm respects their legitimate claims that will allow them to enter into negotiations with you. You and State Farm now have no excuse not to deliver a good faith offer of settlement.

Very truly yours,

Richard J. Rensch

RJR/jdl
Enclosure
cc: Aaron Thornton

RR
RENSCH & RENSCH LAW, P.C., L.L.O.

4 of 4