IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AARON THORNTON and TRICIA THORNTON, Husband and Wife,<br><br>            Plaintiffs,<br><br>   vs.<br><br>STATE FARM INSURANCE COMPANIES,<br><br>            Defendant. | 8:13CV117<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion for Partial Summary Judgment (Filing No. 46), filed by Defendant State Farm Insurance Companies ("State Farm"). For the reasons stated below, the Motion will be granted and Plaintiffs' cause of action for bad faith will be dismissed.

## BACKGROUND

Unless otherwise indicated, the following facts were presented in the parties' briefs and were supported by pinpoint citations to admissible evidence in the record that the parties have admitted, or that the parties have not properly resisted[1] as required by NECivR 56.1[2] and Fed. R. Civ. P. 56.

On July 19, 2012, Plaintiff Aaron Thornton ("Mr. Thornton") was involved in an automobile accident near the intersection of 25th Avenue and Leavenworth Streets in Omaha, Nebraska, when a vehicle driven by Shane Trussell ("Trussell") suddenly switched lanes in front of Mr. Thornton's motorcycle. Mr. Thornton hit Trussell's vehicle,

---

[1] "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1).

[2] Only some of Plaintiffs' numbered paragraphs reference specific paragraphs in State Farm's Statement of Material facts (see Pls.' Br., Filing No. 51 at 2-6). The Court has attempted to reconcile Plaintiffs' response to determine which facts are not in dispute or have been otherwise admitted.

was thrown from his motorcycle, and later taken by ambulance to Creighton University Medical Center.

At the hospital, Mr. Thornton received staples to close a cut on his right leg. He was also treated for road rash on his back, wrist, and ankles. He was released from the hospital the same day, and was cleared to return to light duty work on July 30, 2012. He used several hours of unpaid leave while recovering from the accident.

On August 30, 2012, Mr. Thornton made a claim with State Farm under Plaintiffs' medical payments coverage, seeking medical payment benefits to cover medical bills incurred in connection with the accident. On September 7, 2012, State Farm issued a check to Mr. Thornton for $1,000, the limit of Plaintiffs' medical payments coverage. On November 29, 2012, Trussell's insurer offered Plaintiffs $25,000, the limit of Trussell's policy to settle all claims against Trussell. By letter dated December 11, 2012, Plaintiffs' counsel notified State Farm of the settlement offer from Trussell's insurer. With State Farm's consent, Plaintiffs accepted the $25,000 settlement offer from Trussell.

Plaintiffs made another underinsured motorist claim ("UIM") claim to State Farm on December 11, 2012. Mr. Thornton claimed that he incurred medical bills totaling $29,801.19 and lost wages in the amount of $9,572.40.[3]

State Farm performed a claim investigation to determine the value of Plaintiffs' UIM claim. Richard Buchmann, a State Farm Team Manager, oversaw the claim investigation. He evaluated the UIM claim based on his knowledge of the issues and the damages claimed, his knowledge and experience regarding the amounts paid by State

---

[3] During discovery, Mr. Thornton revised his claim for lost wages to $4,686.88. (Pls.' Supp. Answers to Interrogs., Filing No. 48-1 at ECF 19.)

2

Farm for similar claims, and his knowledge and experience regarding jury verdicts awarded in similar cases. State Farm employees also reviewed the police report regarding the accident, photographs of Mr. Thornton's injuries, Mr. Thornton's medical records and claimed medical bills, and Mr. Thornton's claimed wage loss.

Based upon its investigation, State Farm concluded that the majority of Mr. Thornton's medical bills were incurred on the day of the accident. Specifically, of the $29,801.19 in claimed medical bills incurred as of December 2012, $24,442.21 was for treatment rendered on July 19, 2012, the date of the accident. State Farm was not provided with any evidence that Mr. Thornton was permanently disabled as a result of the accident, although he did have a scar on his leg. (*See* Filing No. 48-1 at Dep. 68:21-24.)

The policy at issue permitted State Farm to deduct from a UIM claim sums already paid by a liable third party, and other insurance payments received. (Policy, Filing No. 48-3 at ECF 26.) Deducting the $26,000 already received by Plaintiffs, and taking into account the total medical bills incurred, lost wages claimed, the lack of any permanent disability, and the fact that that most of Mr. Thornton's bills related to the date of the accident, Buchmann concluded the claim had a value of $14,000.00 to $30,000.00. State Farm offered Plaintiffs $25,000 to settle Plaintiffs' UIM claim.

Plaintiffs, through counsel, did not accept State Farm's offer. On February 5, 2013, Plaintiffs' attorney requested that State Farm reconsider its offer and settle for the limits of Plaintiffs' UIM coverage.[4] Plaintiffs claimed for the first time that Mr. Thornton

---

[4] The parties agree that the UIM policy limits were $100,000. (Policy, Filing No. 48-3 at ECF 6; Rensch Letter, Filing No. 48-3 at ECF 48.)

3

would also "require most likely two to three surgeries at the cost of $5,000.00 per surgery" to address the appearance of a scar on his right leg. (Letter dated February 5, 2013, Filing No. 48-3 at ECF 46.) In support of Plaintiffs' claims for the anticipated surgeries, counsel for Plaintiffs enclosed notes from Mr. Thornton's plastic surgeon which stated:

> **SUBJECTIVE:** [Mr. Thornton] is coming in for follow-up of his right lower extremity wound that occurred as a result of a motorcycle accident on 07/19/2012. He has now healed. He states that it took about three months. He had gotten to the point where the skin would heal over and then break back open with some blistering. That has now resolved. For the most part he states that it feels okay although it is painful and itchy at times. He has some indentation in that leg that he is concerned about. He has been moisturizing the skin and keeping that new skin protected.
>
> **OBJECTIVE:** . . . Right lower extremity wound is now completely healed. He has a hypertrophic scar with evidence of soft tissue loss and some indentation of that area. Skin is still very shiny in this area.
>
> **ASSESSMENT:**
>
> 1. Right lower extremity wound now healed.
>
> 2. Deforming scar right lower extremity.
>
> 3. Painful scar.
>
> **RECOMMENDATIONS:**  We talked to [Mr. Thornton] about possible revision of this scar . . . . Any surgery will still leave a scar and he is aware of that. We would be able to improve upon the appearance as well as hopefully some of the pain and itching he is experiencing. It would require most likely two to three surgeries. We have given him a price estimate of around $5,000.00 per surgery. At this point he wants to think about things. We will see him back if he decides to proceed.

(Filing No. 48-3 at ECF 48.)

Plaintiffs also added claims for approximately $3,200 in pharmacy bills not previously provided to State Farm. Including these items, the total medical expenses

claimed by Mr. Thornton increased to $33,023.74.[5] Considered with Mr. Thornton's claim for lost wages, his total claim increased to $42,596.14, plus $15,000 for the proposed surgeries for his scar.

State Farm notified counsel for Plaintiff that it would not include the additional $15,000 in its consideration because Mr. Thornton had not incurred any surgical expenses, and he had not decided whether he would undergo surgery in the future. State Farm did consider the additional pharmacy bills, but it did not revise its offer of $25,000. Plaintiffs did not accept State Farm's offer and again asked State Farm to reconsider and settle for the limits of Plaintiffs' UIM coverage. Plaintiffs filed this action on March 5, 2013, in the District Court of Douglas County, Nebraska, asserting claims for breach of contract and bad faith. State Farm subsequently removed to this Court. State Farm now moves for summary judgment on the bad faith claim.

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint,* 736 F.3d 1134, 1136 (8th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). "Summary Judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n. 2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) *cert. denied*, 132 S.Ct. 513 (2011)) (internal quotations omitted). In reviewing a motion for summary judgment, the court will view "all facts and mak[e] all reasonable

---

[5] This amount reflects the itemized medical expenses, other than expenses for proposed surgeries, that Plaintiffs claimed in the letter sent by their attorney to State Farm dated February 5, 2013. (Rensch Letter, Filing No. 48-3 at ECF 47.)

inferences favorable to the nonmovant." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe,* 690 F.3d at 1011 (quoting *Torgerson*, 643 F.3d at 1042) (internal quotations omitted). "'[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir.

2012) (quoting *Torgerson*, 643 F.3d at 1042) (internal quotations omitted). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue for trial" and summary judgment is appropriate. *Torgerson*, 643 F.3d at 1042 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)) (internal quotations omitted).

## DISCUSSION

State Farm argues that Plaintiffs' bad faith claims fail under Nebraska law.[6] Under Nebraska law:

> To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the insurance policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.

*LeRette v. Am. Med. Sec., Inc.*, 705 N.W.2d 41, 49 (Neb. 2005) (quoting *Braesch v. Union Ins. Co.*, 464 N.W.2d 769, 777 (Neb. 1991)). "[A]n insurance company has a right to debate a claim that is 'fairly debatable,' or subject to a reasonable dispute, without being subject to a bad faith claim." *Williams v. Allstate Indem. Co.*, 669 N.W.2d 455, 460 (Neb. 2003) (quoting *Radecki v. Mutual of Omaha Ins. Co.*, 255 Neb. 224, 583 N.W.2d 320, 325 (Neb. 1998)). If an insurer has an arguable basis to deny a claim, "the insured's bad faith cause of action fails as a matter of law regardless of the manner in which an investigation was or was not conducted." *LeRette*, 705 N.W.2d at 50 (quoting *Radecki*, 583 N.W.2d at 326). "The question '[w]hether a claim is fairly debatable is

---

[6] The parties agree that Nebraska law applies to Plaintiffs' substantive claims. The Court's independent review demonstrates that Nebraska is the place where the injury occurred, is the domicile of at least one of the parties, and is the place where the parties' relationship is centered. *See John T. Jones Constr. Co. v. Hoot Gen. Constr. Co., Inc.*, 613 F.3d 778, 782 (8th Cir. 2010); *Erickson v. U-Haul Int'l*, 767 N.W.2d 765, 772 (Neb. 2009). Accordingly, the Court will apply Nebraska law to Plaintiffs' bad faith claims.

appropriately decided by the court as a matter of law . . . and such a determination is based on the information available to the insurance company at the time the demand is presented.'" *Id.* (quoting *Radecki*, 583 N.W.2d at 326).

A claim for bad faith "embraces any number of bad faith settlement tactics, such as inadequate investigation, delays in settlement, false accusations, and so forth." *Ruwe v. Farmers Mut. United Ins. Co.*, 469 N.W.2d 129, 135 (Neb. 1991). Plaintiffs' claim for bad faith is based on three alleged bad-faith settlement tactics: (1) State Farm's failure to consider the potential surgeries recommended to repair Mr. Thornton's scarring in settling the UIM claim; (2) State Farm's failure to consider the loss of consortium claim of Plaintiff Tricia Thornton ("Ms. Thornton"); and (3) State Farm's failure to enter into a reasonable negotiation. For the reasons discussed below, the evidence fails to demonstrate that any of these alleged acts or omissions were made in bad faith.

### *1.   Potential Scar Repair Surgeries*

The undisputed evidence shows that State Farm investigated the claim by reviewing the Omaha Police Department's accident report, Mr. Thornton's medical records and medical bills, Mr. Thornton's claimed lost wages, and photographs of Mr. Thornton's injuries. (Filing No. 48-2 ¶¶ 12-15.) Plaintiffs argue that State Farm acted in bad faith by failing to consider the surgeries recommended by Mr. Thornton's plastic surgeon, Dr. Nagl T. Ayoub ("Dr. Ayoub"). Dr. Ayoub recommended "two to three" surgeries that would potentially relieve pain and itching around the scar on Mr. Thornton's leg. (Filing No. 48-3 at ECF 48.) Dr. Ayoub estimated the surgeries would cost around $5,000 each. At the time Dr. Ayoub recommended the surgeries, Mr.

8

Thornton stated that he wanted "to think about things" and Dr. Ayoub noted that he would "see [Mr. Thornton] back if he decide[d] to proceed." (Filing No. 48-3 at ECF 48.)

In support of their argument, Plaintiffs quote Nebraska Civil Jury Instruction 4.00 which states, in relevant part, that a plaintiff may recover for future medical care so long as it is "reasonably certain to be needed and provided in the future." NJI2d Civ. 4.0 (West 2011). No evidence in the record demonstrates that the surgeries were reasonably certain to be provided in the future. Mr. Thornton merely indicated that he would consider the surgeries and return to Dr. Ayoub if he decided to proceed. Plaintiffs nevertheless argue that State Farm's failure to consider the surgeries recommended by a doctor resulted in bad faith "even if there is still a question as to whether the Plaintiff will choose to go under the knife for additional surgeries." (Pls.' Br., Filing No. 51 at 9.) This unsupported assertion is contrary to the law cited by Plaintiffs. At the time State Farm made its UIM offer, there was no indication that the surgeries were reasonably certain to be provided in the future. Accordingly, State Farm's decision to exclude the surgeries from its offer was fairly debatable and does not provide any basis for a bad faith claim.

## 2. *Ms. Thornton's Loss of Consortium Claim*

The Court cannot conclude that State Farm's UIM offer lacked a reasonable basis or that State Farm failed to consider claims such as loss of consortium. Excluding claims for potential surgeries, Mr. Thornton claimed a total of $42,596.14 for medical expenses and lost wages, including wage amounts he later abandoned during discovery. When considered with benefits already received, Mr. Thornton would have received total insurance payments of $51,000 with State Farm's UIM offer. Thus, State

9

Farm's UIM offer included $8,403.86 to account for claims such as pain and suffering and loss of consortium. There is no indication that this amount was so unreasonable as to demonstrate bad faith. Plaintiffs never requested a specific recovery for Ms. Thornton's loss of consortium, and no evidence suggests State Farm completely ignored such claims. Even if a jury ultimately concludes that this offer did not adequately compensate the Plaintiffs, the evidence demonstrates that State Farm's offer was subject to reasonable dispute.

### 3. *Failure to Enter a Reasonable Negotiation*

Plaintiffs claim that State Farm failed to enter into a reasonable negotiation because State Farm never offered more than $25,000 to settle the UIM claim. Plaintiffs do not cite any Nebraska law that provides guidance as to what constitutes a reasonable negotiation. Instead, Plaintiffs argue that "the evidence clearly shows that Plaintiffs and their attorneys were making every reasonable effort to supplement the documentation for the claims handler and were essentially screaming for a good faith offer." (Filing No. 51 at 11.) Yet Plaintiffs do not explain why State Farm had a good faith duty to increase its offer based solely upon the supplemented documentation. Plaintiffs do not specify what would have been a good faith offer, and never requested a specific amount other than the policy limits. Further, the only items from any supplemented documentation specifically excluded from State Farm's offer were the potential surgeries. As discussed above, there was no indication that these surgeries were relatively certain to occur, and their exclusion from the offer did not amount to bad faith. Based upon the evidence in the record, there is no indication that State Farm's failure to revise its offer was the result of bad faith.

Plaintiffs also argue that State Farm's bad faith continues to this date because it has not revised its offer after being presented with "vast additional damages suffered, and continuing to be suffered, by the Plaintiffs." (Filing No. 51 at 10.) Plaintiffs do not identify the vast additional damages, nor do they suggest what an increased offer should be. Instead, Plaintiffs cite several cases from jurisdictions other than Nebraska suggesting that insurers have a continuing duty of good faith. While this may be true, for purposes of this cause of action, Nebraska courts are clear that "[t]he question '[w]hether a claim is fairly debatable is appropriately decided by the court as a matter of law . . . and such a determination is based on the information available to the insurance company at the time the demand is presented.'" *LeRette*, 705 N.W.2d at 50 (quoting *Radecki*, 583 N.W.2d at 326). The Court concludes that based upon the information available to State Farm at the time Plaintiffs made their claim, State Farm's offer was at least subject to reasonable dispute.

Accordingly,

IT IS ORDERED:

1. The Motion for Partial Summary Judgment (Filing No. 46), filed by Defendant State Farm Insurance Companies, is granted; and
2. Plaintiffs' Second Cause of Action for bad faith is dismissed, with prejudice.

Dated this 5th day of March, 2015

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge